**19MAG 4546**

Approved: _____
DANIEL H. WOLF
Assistant United States Attorney

Before:  HONORABLE ONA T. WANG
         United States Magistrate Judge
         Southern District of New York

------------------------------------ x

UNITED STATES OF AMERICA          :    **COMPLAINT**

         - v. -                   :    Violation of 21 U.S.C.
                                       § 846
                                  :
JEFREY SANCHEZ-REYES,             :    COUNTY OF OFFENSE:
                                       BRONX
              Defendant.          :

------------------------------------ x

SOUTHERN DISTRICT OF NEW YORK, ss.:

    JAMES F. MORRISON, being duly sworn, deposes and says that he is a Postal Inspector with the United States Postal Inspection Service ("USPIS"), and charges as follows:

COUNT ONE
(Narcotics Conspiracy)

    1.  From at least in or about March 2018 up to and including in or about May 2019, in the Southern District of New York and elsewhere, JEFREY SANCHEZ-REYES, the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

    2.  It was a part and an object of the conspiracy that JEFREY SANCHEZ-REYES, the defendant, and others known and unknown, would and did distribute and possess with the intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

    3.  The controlled substance that JEFREY SANCHEZ-REYES, the defendant, conspired to distribute and possess with the intent to distribute was five kilograms and more of mixtures and

substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4. I am a Postal Inspector with USPIS and have served in that role for approximately 11 years. I have been personally involved in the investigation of this matter. This Affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Background

5. Since in or about March 2018, the USPIS, in conjunction with the United States Drug Enforcement Administration, has been investigating a drug trafficking organization (the "DTO") that ships parcels containing cocaine (the "Parcels") through the United States Postal Service ("USPS") from Puerto Rico into the New York City area. The USPIS has identified dozens of Parcels to date – based on, among other things, the locations from which they were shipped and to which they were addressed, their approximate size and weight, their packaging and means of shipment (e.g., express or priority), and mailing labels – and has tracked the Parcels as they were shipped from Puerto Rico to the Bronx, New York.

6. Through the use of controlled deliveries of Parcels, seizures of Parcels, and surveillance, the USPIS has discovered, among other things, that members of the DTO in Puerto Rico ship the Parcels from certain post offices in Puerto Rico to individuals at various addresses in the Bronx, New York. As set forth below, JEFREY SANCHEZ-REYES, the defendant, receives and transports Parcels in the Bronx for the DTO.

### The Monroe Address and Webb Apartment

7. Based on my review of New York State Department of Motor Vehicle records, I have learned, among other things, that JEFREY SANCHEZ-REYES, the defendant, was issued a driver's license on or about May 18, 2015, which lists his residential address as a particular address on Monroe Avenue in the Bronx (the "Monroe Address").

8. Based on my conversations with another law enforcement agent who has interviewed an individual ("Individual-1") who resides at an apartment at a particular address on Webb Avenue in the Bronx (the "Webb Apartment"), my review of USPIS records, and my training and experience, I have learned that since in or about March 2018, JEFREY SANCHEZ-REYES, the defendant, has frequently visited the Webb Apartment.

### The July 2018 Parcel

9. Based on my conversations with other law enforcement agents and my review of records maintained by USPIS, I have learned, in substance and among other things, the following:

   a. In or about July 2018, a USPS parcel was identified by USPIS as suspicious ("Parcel-1"). Parcel-1 was identified as suspicious based on, among other things, the similarity of weight and size, manner of and price of shipment, and originating location to that of other packages that law enforcement had previously seized during this investigation pursuant to judicially authorized search warrants and determined to contain cocaine.

   b. Parcel-1 had been shipped from Puerto Rico and was addressed to "Jeff Sanchez" at the Monroe Address (the address listed on the driver's license of JEFREY SANCHEZ-REYES, the defendant).

   c. During a judicially authorized search of Parcel-1, law enforcement agents recovered from inside Parcel-1, among other items, two bricks of a white powdery substance, weighing approximately two kilograms.

   d. The white powdery substance contained in Parcel-1 field-tested positive for cocaine.

10. Based on the facts set forth herein, and my training, experience, and participation in this investigation, I believe

3

the named recipient of Parcel-1, "Jeff Sanchez," is JEFREY SANCHEZ-REYES, the defendant.

### The October 2018 Parcel

11. Based on my conversations with other law enforcement agents and my review of records maintained by USPIS, I have learned, in substance and among other things, the following:

    a. In or about October 2018, law enforcement agents identified a USPS parcel as suspicious ("Parcel-2"). Parcel-2 had been shipped from Puerto Rico and was addressed to "Reyes Sanchez" at a particular apartment on Bryant Avenue in the Bronx. Parcel-2 was identified as suspicious based on, among other things, the weight and size of the package, the similarity of the writing on the box to packages that law enforcement had previously seized during this investigation pursuant to judicially authorized search warrants and determined to contain cocaine, and the similarity of the recipient name ("Reyes Sanchez") to the name on Parcel-1 ("Jeff Sanchez"), which contained cocaine.

    b. On or about October 4, 2018, prior to Parcel-2 being delivered to its intended destination by USPS, JEFREY SANCHEZ-REYES, the defendant, entered a USPS Office in the Bronx ("Post Office-1") and inquired about Parcel-2. Later that day, SANCHEZ-REYES returned to Post Office-1 and, upon providing proof of identification, retrieved Parcel-2.

    c. After SANCHEZ-REYES picked up Parcel-2 at Post Office-1, law enforcement agents observed SANCHEZ-REYES place Parcel-2 in a vehicle and drive to the Monroe Address (the address listed on the driver's license of SANCHEZ-REYES).

    d. Law enforcement agents then observed SANCHEZ-REYES enter the Monroe Address with a black bag that I believe, based on my training, experience, and participation in this investigation, contained the contents of Parcel-2.

### The January 2019 Parcel

12. Based on my conversations with other law enforcement agents and my review of records maintained by USPIS, I have learned, in substance and among other things, the following:

    a. In or about January 2019, law enforcement agents identified a USPS parcel as suspicious ("Parcel-3"). Parcel-3

4

had been shipped from Puerto Rico and was addressed to "Jeffrey Sanchez" at a particular apartment on Mount Hope Place in the Bronx (the "Mount Hope Address"). Parcel-3 was identified as suspicious based on, among other things, similarities to packages previously identified as suspicious in the course of this investigation, such as the Parcels discussed above, including the listed recipient ("Jeffrey Sanchez").

  b. On or about January 9, 2019, law enforcement agents observed a USPS carrier deliver Parcel-3 to the Mount Hope Address.

  c. Approximately one minute later, law enforcement agents observed JEFREY SANCHEZ-REYES, the defendant, exit the Mount Hope Address carrying what appeared to be Parcel-3.

  d. SANCHEZ-REYES then entered a vehicle and drove to the Monroe Address, where SANCHEZ-REYES exited his vehicle and walked into the Monroe Address carrying what appeared to be Parcel-3.

### The April 2019 Parcel

13. Based on my conversations with other law enforcement agents and my review of records maintained by USPIS, I have learned, in substance and among other things, the following:

  a. In or about April 2019, law enforcement agents identified a USPS parcel as suspicious ("Parcel-4"). Parcel-4 had been shipped from Puerto Rico and was addressed to "Jeffrey Sanchez" at the Mount Hope Address. Parcel-4 was identified as suspicious based on, among other things, similarities to packages previously identified as suspicious in the course of this investigation, such as the Parcels discussed above, including the listed recipient ("Jeffrey Sanchez") and address (the Mount Hope Address).

  b. On or about April 26, 2019, law enforcement agents observed JEFREY SANCHEZ-REYES, the defendant, walk toward a USPS truck parked near the Mount Hope Address, which was delivering Parcel-4. Law enforcement agents then observed SANCHEZ-REYES have a conversation with the USPS carrier, show what appeared to be proof of identification to the USPS carrier, and take possession of Parcel-4.

  c. Approximately two minutes later, SANCHEZ-REYES was observed entering the basement of the Monroe Address, which

is approximately one block from the Mount Hope Address, carrying what appeared to be Parcel-4.

### The May 2019 Parcel and Controlled Delivery

14. Based on my participation in the investigation, my conversations with other law enforcement agents, and my review of USPIS records, I have learned, in substance and among other things, the following:

   a. In or about May 2019, law enforcement agents identified a USPS parcel as suspicious ("Parcel-5"). Parcel-5 had been shipped from Puerto Rico and was addressed to "Reyes Sanchez Jefrey" at the Webb Apartment (the apartment identified by Individual-1 and through USPIS records as a residence that SANCHEZ-REYES frequently visits). Parcel-5 was identified as suspicious based on, among other things, similarities to packages previously identified as suspicious in the course of this investigation, such as the Parcels discussed above, including the listed recipient ("Reyes Sanchez Jefrey") and address (the Webb Apartment).

   b. On or about May 8, 2019, law enforcement agents removed Parcel-5 from a post office in the Bronx and obtained a judicially authorized search warrant for Parcel-5. Upon opening Parcel-5, law enforcement discovered, among other items, two bundles of a white powdery substance, weighing approximately 500 grams. The white powdery substance field-tested positive for cocaine.

   c. On or about May 9, 2019, an undercover USPIS inspector posing as a USPS employee (the "UC") conducted a controlled delivery of Parcel-5 (which contained approximately 500 grams of cocaine, as explained above) to the Webb Apartment.

   d. The UC arrived at the building containing the Webb Apartment ("Building-1"), and JEFREY SANCHEZ-REYES, the defendant, met the UC at the entrance to Building-1 to receive delivery of Parcel-5. During the course of that delivery, SANCHEZ-REYES provided an identification card to the UC, took possession of Parcel-5, turned, and went back into Building-1, with Parcel-5 without taking back his identification card. A law enforcement agent stationed inside Building-1 then observed SANCHEZ-REYES carry Parcel-5 into the Webb Apartment.

   e. Minutes later, law enforcement agents knocked on the door of the Webb Apartment and announced themselves as law

enforcement agents. Upon knocking on the door, the agents heard sounds consistent with at least one individual being present inside the apartment. Believing that SANCHEZ-REYES was likely to destroy the contents of Parcel-5, the agents then entered the Webb Apartment.

  f. Upon entering the Webb Apartment, the law enforcement agents observed SANCHEZ-REYES standing in the apartment's kitchen. Parcel-5 was open on a table and the kitchen window was open. The agents looked out the kitchen window and saw what appeared to be the contents of Parcel-5 on the street outside Building-1. Based on my training and experience, I believe that SANCHEZ-REYES had thrown the contents of Parcel-5 out the window in an effort to avoid having the cocaine seized by law enforcement.

  g. Law enforcement agents placed SANCHEZ-REYES under arrest.

### The Defendant's Post-Arrest Statement

15. Based on my participation in the investigation and my conversations with other law enforcement agents, I have learned that following his arrest, JEFREY SANCHEZ-REYES, the defendant, was advised of his *Miranda* rights and then made the following statements, in substance and in part:

  a. For approximately the past nine months, SANCHEZ-REYES received parcels at the Monroe Address and the Webb Address that he knew contained cocaine.

  b. SANCHEZ-REYES was paid by associates for each parcel he received.

### The Monroe Address Search

16. Based on my participation in the investigation and my conversations with other law enforcement agents, I have learned that on or about May 9, 2019, law enforcement agents executed a judicially authorized search of the Monroe Address and recovered, among other items, a digital scale, documents that appear to be ledgers, and packaging and other materials consistent with certain of the Parcels seized during the course of this investigation and found to contain cocaine (the "Recovered Items").

17. Based on the facts set forth in the preceding paragraph (¶ 16), and my training and experience, I believe the Recovered Items are consistent with drug trafficking activity.

WHEREFORE, the deponent respectfully requests that JEFREY SANCHEZ-REYES, the defendant, be imprisoned or bailed, as the case may be.

JAMES F. MORRISON
Postal Inspector
USPIS

Sworn to before me this
10th day of May, 2019.

THE HONORABLE ONA T. WANG
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

8